### 40657. WHITE v. THE STATE.
(317 SE2d 196)

BELL, Justice.

On September 29, 1982, police found Ruby Maude White, an elderly female, stabbed to death in the bedroom closet of her home in Bainbridge, Decatur County, Georgia. Her bedroom was in disarray; the dresser and nightstand drawers were pulled out onto the floor and her purse and wallet were open. An autopsy showed that Mrs. White died between 7:00 and 9:00 a.m. that day as a result of a cut throat and multiple stab wounds to her chest.

Neighbors discovered Mrs. White's body after becoming alarmed when she did not appear to be home from 8:30 a.m. until noon, despite their plans to attend church together that morning. When Detective Larry Funderburke arrived at the scene he noticed that the victim's grass had been recently cut. He sent Detective Jerry Carter to locate the appellant, Freddie Lee White, whose brother, Billy, who was incarcerated on this particular date, normally cut Mrs. White's grass. Upon questioning, the appellant admitted to Funderburke that he knew the victim and cut her grass on the day prior to the murder.

A fingerprint expert, Dr. Jim Howard, successfully lifted fingerprints from the victim's bedroom and doorways. A second expert, Officer Butch Windham, compared the lifted fingerprints with the prints of the victim and the appellant. The appellant's fingerprint matched a print found on a blue cosmetic case lying on the bedroom dresser.

The victim's sister, who had lived with Mrs. White previously, and her brother testified that the victim never admitted strangers into her house. They said that only family members and the regular housekeeper entered on a regular basis, and that Mrs. White's two brothers performed all necessary chores inside the home. Since the defendant did not testify at trial, the defense counsel offered no explanation for the presence of the appellant's fingerprint in the victim's bedroom.

The jury convicted Freddie Lee White for the murder of Ruby Maude White, and he was sentenced to life imprisonment. The appellant appeals this decision and states five grounds of error.

1). In his first enumeration of error, the appellant argues that the trial court erred in denying his motion for a directed verdict of acquittal. According to the appellant, the sole basis of his conviction was the circumstantial fingerprint evidence, and he contends that the state failed to prove beyond a reasonable doubt that his fingerprint could only have been made at the time of the crime, and failed to exclude every reasonable hypothesis save that of his guilt. We disagree with the appellant and hold that the trial court properly denied the motion for directed verdict.

The evidence presented by the state was entirely circumstantial, and "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Moreover, assuming that the appellant's contention that his fingerprint is the sole evidence linking him to the crime is correct, the state was required "to prove to the exclusion of every reasonable hypothesis that the fingerprints could only have been impressed at the time the crime was committed. *Barnett v. State*, 153 Ga. App. 430 (1) (265 SE2d 348) (1980)." *Jones v. State*, 156 Ga. App. 823, 824 (275 SE2d 712) (1980). " 'However, . . . circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt.' " *Jones v. State*, supra, 156 Ga. App. at 824.

The question of whether there was a reasonable hypothesis favorable to the accused is a question for the jury. *Murdix v. State*, 250 Ga. 272 (1) (297 SE2d 265) (1982); *Harris v. State*, 236 Ga. 242, 243-244 (223 SE2d 643) (1976). " 'If a jury is authorized to find that the evidence, circumstantial though it may be, is sufficient to exclude every reasonable hypothesis save that of guilt, the verdict of the jury will not be disturbed by the appellate court unless the verdict is insupportable as a matter of law. [Cits.]' " *Jones v. State*, supra, 156 Ga. App. at 824; Accord *Pugh v. State*, 250 Ga. 668 (1) (300 SE2d 504) (1983), *Harris v. State*, supra, 236 Ga. at 245.

In the instant case, the evidence suggests no occasion for appellant to have entered Mrs. White's bedroom, the scene of the murder, and have left his print other than at the time of the crime. Compare *Barnett v. State*, supra, 153 Ga. App. 430; *Vaughn v. State*, 136 Ga. App. 54, 55 (220 SE2d 66) (1975). Since, in general, a home is a private place, and, since, more specifically, the victim never admitted strangers into her home, not even for household repairs, a makeup case lying on a bedroom dresser would not be accessible to the general public. See *Jones v. State*, supra, 156 Ga. App. at 824. Compare *Anthony v. State*, 85 Ga. App. 119 (68 SE2d 150) (1951). Moreover, the appellant's brother usually mowed the victim's lawn, and it appears that there was no contact between the appellant and the victim other than one day before the victim's death.

For these reasons we find that the evidence was sufficient to authorize the jury to find that the appellant's fingerprint could only have been made at the time of the crime and that the evidence excluded every reasonable hypothesis save the appellant's guilt. Moreover, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lee v. State*, 247 Ga. 411 (6) (276 SE2d 590) (1981); Jackson v. Virginia, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). We thus conclude that the trial court properly denied the appellant's motion for a directed verdict.

2). In his second enumeration of error, the appellant alleges that the trial court erred in denying his motion to suppress the statement he made to Detective Funderburke. While being questioned by Funderburke, the appellant gave a statement to the effect that he knew Ruby White and had mowed her lawn on September 28, 1982. The appellant moved to have this statement suppressed on the ground that the state, in violation of OCGA § 17-7-210, failed to supply him with a copy of the statement at least 10 days prior to the trial of the case. We disagree with the appellant's contention since he received a copy of the substance of his statement.

OCGA § 17-7-210 provides that a defendant, upon timely written request, is entitled to have furnished to him in writing all relevant and material portions of any oral statement he gave while in police custody. See *Van Kleeck v. State*, 250 Ga. 551 (1) (299 SE2d 735) (1983); *Reed v. State*, 163 Ga. App. 364, 365 (295 SE2d 108) (1982). If the state fails to comply with such a timely request, then no relevant or material portions of the defendant's oral statement can be used against the defendant at trial. OCGA § 17-7-210 (d); *Van Kleeck v. State*, supra, 250 Ga. at 551.

In response to the appellant's request pursuant to OCGA § 17-7-210, the state provided him with the second page of Detective Funderburke's police report on this case. That report contained the

following summary of the appellant's oral statement: "Freddie White admitted to Detective Carter that he was doing yard work and he did cut Mrs. White's yard on 9/28/82. After Freddie White was picked up and questioned about cutting Mrs. White's grass on 9/28/82, and he admitted cutting the grass, Freddie White was held for further questioning." At trial Detective Funderburke testified that the appellant told him that he knew Mrs. White and that he cut her grass on September 28, 1982. The appellant argues that Funderburke's testimony concerning the statement the appellant made to him should have been excluded because the state did not furnish him a copy of that statement, but instead furnished him a copy of a statement given to Detective Carter. We disagree. The purpose of the statute is to inform the defendant "in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage." *McCarty v. State*, 161 Ga. App. 444 (1) (288 SE2d 249) (1982), aff'd on other grounds, 249 Ga. 618 (292 SE2d 700) (1982). Here, even though the police report did not indicate that the appellant gave a statement to Detective Funderburke as well as to Carter, we find that the purpose of the statute was satisfied, as the appellant was clearly notified by the state of the substance of the statement the state anticipated using against him. See *McCarty v. State*, supra, 161 Ga. App. at 445-446; *Tyson v. State*, 165 Ga. App. 22 (1) (299 SE2d 69) (1983). Thus, we conclude that the trial court properly denied the appellant's motion to suppress.

3). In his third enumeration of error the appellant contends that the trial court erred in allowing, over his objection, three witnesses to testify whose names were not on the witness lists provided to him pursuant to his demand under OCGA § 17-7-110. The state acknowledges that these witnesses were not on the witness lists provided to the appellant, but it contends that the trial court correctly allowed them to testify after permitting the appellant to interview each witness before he testified. We agree.

The purpose of OCGA § 17-7-110 is to afford the defendant a reasonable opportunity to interview witnesses before trial so as to avoid being surprised by testimony at trial. *Hicks v. State*, 232 Ga. 393, 399 (207 SE2d 30) (1974). This court and the Court of Appeals have held that the testimony of a witness whose name was not supplied to the defendant does not have to be excluded if other means of protecting the defendant and effectuating the intent of the statute can be found. *Simmons v. State*, 249 Ga. 860 (4) (295 SE2d 84) (1982); *Cates v. State*, 245 Ga. 30 (3) (262 SE2d 796) (1980); *Butler v. State*, 139 Ga. App. 92 (1) (227 SE2d 889) (1976). And, in instances when the trial court has allowed the defendant an opportunity to interview "unlisted" witnesses, it has been held that the purpose of the statute has been satisfied, and that the trial court properly allowed

the witnesses to testify. *Simmons v. State*, 249 Ga. at 861; *Cates v. State*, supra, 245 Ga. at 34; *Butler v. State*, supra, 139 Ga. App. at 93.

In the instant case the trial court permitted the appellant to interview each of the three witnesses in question before he testified. We thus find that the purpose of OCGA § 17-7-110 was satisfied, and that the trial court properly allowed these witnesses to testify. *Simmons v. State*, supra, 249 Ga. at 861; *Cates v. State*, supra, 245 Ga. at 37; *Butler v. State*, supra, 139 Ga. App. at 93.

4). At trial the appellant attempted to cross-examine Dr. James Howard of the State Crime Laboratory concerning the results of tests performed on certain knives delivered by Detective Funderburke to the crime lab. Dr. Howard stated that he had not performed the testing on the knives, and, on that ground, the state objected to any cross-examination concerning those tests. The trial court sustained the objection, and in his fourth enumeration of error the appellant contends that that ruling was erroneous. We disagree.

Although the appellant is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court. OCGA § 24-9-64; *Stone v. State*, 250 Ga. 718, 719 (300 SE2d 500) (1983); *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982). Because Dr. Howard had not conducted the tests on the knives in question, we find that the trial court did not abuse its discretion in limiting the appellant's cross-examination of Dr. Howard.

5). In his fifth enumeration of error, the appellant contends that the trial court erred in not requiring Detective Funderburke, who had been exempted from sequestration, to be the first witness to testify. We disagree. A trial court is vested with the discretion to make exceptions to the rule of sequestration, and "unless that discretion has been abused, a trial court's decision will not be reversed by this court on appeal." *Davis v. State*, 242 Ga. 901 (3) (252 SE2d 443) (1979); *Disby v. State*, 238 Ga. 178 (1) (231 SE2d 763) (1977). Because the prosecutor stated that Detective Funderburke was the chief investigator in the case and that his presence was necessary to the orderly prosecution of the case, we find that the trial court did not err in permitting Funderburke to remain in the courtroom and in refusing to direct that he be called as the state's first witness. *Blalock v. State*, 250 Ga. 441 (1) (298 SE2d 477) (1983); *Davis v. State*, supra, 242 Ga. at 904; *McNeal v. State*, 228 Ga. 633 (4) (187 SE2d 271) (1972).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 19, 1984 — REHEARING DENIED JULY 5, 1984.

*Lambert & Floyd, George C. Floyd,* for appellant.
*J. Brown Moseley, District Attorney, Michael J. Bowers,*

*Attorney General, Dennis R. Dunn,* for appellee.